JOSEPH M. BELL & ALS. ADM'RS, *v.* JAMES WOODWARD & AL.

A.'s declaration, soon after the purchase of a farm, "that he bought it for B.," is not evidence to show that A. did not afterwards live upon the farm and carry it on.

Where a court of equity has ordered issues to be sent to a jury "to be tried upon evidence as now taken," the record of a suit at law brought by the plaintiffs to recover the same premises now in controversy, not a part of the evidence taken before the order, is inadmissible to show the competency of one of the defendant's witnesses.

A decision at a law term, never questioned until after two subsequent jury trials of the case, will not then be reconsidered on a motion to set aside a verdict in the same case for a ruling in accordance with the previous decision,

Where two issues are sent from a court of equity, it is competent for the jury to find either of the issues for the plaintiff, and the other for the defendant.

THE questions in this case arose on a new trial of the same issues that were tried in *Bell* v. *Woodward*, reported in 46 N. H. 315 ; the first issue being on the question whether the description in the mortgage deed from Joshua Woodward to Joseph Bell, dated Feb. 28, 1842, included the Samuel Ladd farm. Said mortgage conveyed, with other land, "all the farm in said Haverhill, lying on both sides of Ladd street, so called, on which I now live, and which I now carry on," &c. The second issue was upon the question, whether the description in the mortgage deed from Woodward to Bell, dated Sept. 4, 1844, included the Samuel Ladd farm.

The defendants introduced the deposition of J. B. F. Woodward, who testified as follows : "Joshua Woodward told me that he bargained for the Ladd farm. I think this was in the fall of the year 1840, but it was just as I was turning up the lane to the Ward house, where he lived. It was right at the pump, and just as I drove up he said, I have bargained for the Ladd farm ; and I said, how much do you agree to pay, and I think he told me he was to pay $2600. I think that was the sum. That is all that I recollect of his saying at that time. About noon, after I came from the Corner, I returned and we had a conversation, and he told me he had bought the Ladd farm for James. That was upon the steps in front of his house. I asked him what he bought it for, and he said he bought it for James." To this evidence the plaintiffs objected, and it was ruled out, to which the defendants excepted.

The defendants offered the deposition of Joshua Woodward, taken in perpetuam, being the same deposition which is mentioned in the report of the former case, 46 N. H. 315, 321 ; and to show that the deposition was competent under the agreement stated in that report, and that the interest of Joshua Woodward had been discharged when the deposition was taken, they produced to the court the record of a suit on a writ of entry, commenced by Joseph Bell against Joshua Woodward, James Woodward, 2d, and Joshua Henry Woodward, returnable to the April Term, 1851, in which the plaintiff demanded the Ladd farm. Joshua Woodward pleaded a disclaimer, to which the plaintiff replied, alleging that Joshua Woodward was, at the commencement of that suit, which was March 17, 1851, in possession of the demanded premises, claiming a freehold, upon which replication Joshua Woodward joined issue. The action having been entered at the April Term, 1851, and the plaintiff,

Joseph Bell, having deceased, these plaintiffs at the October Term, 1851, came in and prosecuted that suit.    Subsequently the plaintiffs were non-suited, and judgment was rendered for the defendants on the nonsuit.

The plaintiffs objected to the admission of this record, and it was ruled out on the ground that it did not show a discharge of the interest of Joshua Woodward, and also on the ground that it was not part of the evidence taken in equity, on which the issues were ordered to be tried, to which the defendants excepted·

In the mortgage deed of September 4, 1844, the description of the premises concluded as follows, "being the same land described in my mortgage deed to said Bell, dated February 28, 1842, recorded in the Grafton records, Lib. 168, Fol. 136." The court instructed the jury that it was competent for them to find either of the issues for the plaintiffs and the other for the defendants. The record and depositions aforesaid may be referred to on the hearing.

The jury found that the description in the mortgage of February 28, 1842, did include the Ladd farm, and that the mortgage of September 4, 1844, did not.

The defendants moved to set aside the finding of the jury for error in the foregoing rulings and instructions.

*Hatch, Westgate, H. & G. A. Bingham,* for plaintiffs.

*C. R. Morrison, Hibbard & Felton,* for defendants.

SMITH, J.   I.   The testimony of J. B. F. Woodward was irrelevant.   The purpose for which Joshua Woodward bought the farm has no legal tendency to show what he did, or did not, do with the farm after the purchase.   "Intention is subject to change," and it does not follow because a man once intended to do an act that he did afterwards perform it.   There is a class of cases where the very question in issue is to determine what will probably take place in future, as, for instance, the probable use of a proposed highway, or the probable manner of constructing a projected railroad.   In such cases, evidence of a contract between third parties to afford certain facilities for the use of the high-way if it is built, or evidence of the principal engineer of a railroad as to the plan upon which it is to be finished, is admissible from the very nature of the point in issue, which cannot be determined with absolute certainty, but "must always be more or less a question depending upon the probabilities of the happening of future events."   See *March* v. *P. & C. Railroad,* 19 N. H. 372, p. 376 ; *Hayward* v. *Bath,* 40 N. H. 100, pp. 107–8.   But, even in this class of cases, a naked intention, where no contract has been made, no plan drawn, in short, where no act has been done, is not admissible as tending to show a probability that the intention will thereafter be carried into effect.   *Hayward* v. *Bath,* 38 N. H. 179.   The case at bar is one where the point in controversy is a fact susceptible of proof by the ordinary method of showing actual past occurrences, and there is no need of resorting to the intention of the parties before the happening of these occurrences, in order to ascer-

tain what afterwards took place. See *Hale* v. *Hills*, 8 Conn. 39. Joseph Bell, when he took his deed, had a right to rely on the state of facts then actually existing, and was not bound to inquire into Joshua Woodward's previous intentions.

The language of the court in *Wiggin* v. *Scammon*, 27 N. H. 360, has some tendency to sustain the admissibility of this evidence. But the facts of that case differ widely from this, and the testimony there was admissible as tending to show an agreement, a proposition made by the defendant, and not objected to by the plaintiff; and we cannot regard the second reason given by *Gilchrist, C. J.*, p. 365, for the admission of the evidence as a controlling authority in this case.

As the declarations of Joshua Woodward to J. B. F. Woodward should be excluded for irrelevancy, it is unnecessary to consider the question discussed by counsel, whether, if relevant, they are competent as against these plaintiffs.

II.   The record of the suit at law, *Bell* v. *Woodward & als.*, was inadmissible, because it was not part of the evidence on which the issues were ordered to be tried.   The order at the law term for a trial by jury was as follows :   "Issue to trial term, to be tried upon evidence as now taken, but if either party prefers putting a witness upon the stand, he may do so at his own expense."   It is said that "standing strictly on the order," the deposition of Joshua Woodward is admissible, because it was part of the "evidence as now taken ;" and that if the plaintiffs can raise the objection, the defendant should be permitted to remove it.   It has, however, long been settled in this State, that such an order as the above does not preclude exception "to any particular portion of the testimony, as irrelevant, improper, or inadmissible for any cause." *Dodge* v. *Griswold*, 12 N. H. 573.

If the plaintiffs had been allowed, in support of their objection to the competency of Joshua Woodward, to go outside of the record and the evidence taken in this case, then the defendant would, of course, be entitled to the same privilege in answering the objection.   But the plaintiffs have referred only to the record and the evidence in this case to show the incompetency of Joshua Woodward, and the defendant can meet the objection only by the use of the same materials.   It has been urged that "the admission of the record could not operate unjustly as a surprise upon the plaintiffs, because no time nor opportunity could enable them to obviate the effect of the record, which is permanent and incontrovertible ; and, moreover, the plaintiffs were parties to it, and must be presumed to have had full knowledge of it."   There might be some plausibility in this argument if the record had been offered as substantive evidence bearing directly on the issues, but it was, in fact, offered only to pave the way for the deposition of Joshua Woodward, and its use for that purpose would, if the objection to the competency of Joshua had thereby been removed, have operated to introduce a piece of controvertible testimony, which the plaintiffs, in view of the above order, and of the previous decision in this cause, could not have expected to meet at the trial.   The reasons which induce courts of equity to make such orders as the above, (see *Parker, C. J.*, in *Marston* v. *Brack-*

*ett,* 9 N. H. 336, p. 350,) seem to support the ruling on this point; see, also, *Callaghan* v. *Rochfort,* 3 Atkyns 643.    In the present case, the plaintiffs' objection to the competency of the witness is distinctly taken in the written agreement of Nov. 15, 1861, (see 46 N. H. p. 321,) and if the defendant wished to introduce any extraneous matter to remove the objection, he should have done so before the making of the order.

III.    Upon the rejection of the proposed record evidence, the admissibility of the deposition of Joshua Woodward stands on the same ground as at the time of the previous decision in this case, reported in 46 N. H. 315, when it was held incompetent.    The defendant now asks the court to review that decision and overrule it, alleging that the decision on this point proceeds under a manifest error respecting the facts of the case.    Had this request been made in the shape of a motion for a re-hearing, immediately after the decision was delivered, the point would probably have received a careful re-consideration, (see *Russell* v. *Dyer,* 43 N. H. 396,) but no such course was taken by the defendant.    He never brought this subject to the attention of the court until after the adverse result of the last trial, which was the second trial since the delivery of the decision, and took place subsequently to the publication of that decision in the reports.    We think the defendant cannot complain that the court at the trial term ruled in accordance with a reported decision in this very case, which had never, to the knowledge of the court, been questioned, and which was not questioned at this trial, the defendant offering the deposition on a new ground, and not making the point that the former decision was erroneous.

IV.    The instruction to the jury "that it was competent for them to find either of the issues for the plaintiffs, and the other for the defendants," was correct.    It is not for the presiding justice at a jury trial, to say that issues sent from a court of equity are so improperly framed that they are not distinct from each other.    Objections to the form of the issues should be made in the court from which they are sent, and which alone possesses the power to modify them.    All that the jury have to do is to return a finding on each issue.    The consequences resulting from their findings are to be determined by the court of equity, and we need not consider here whether the issues are, in fact, distinct.

*Verdict on the issues to be certified to the court of equity.*