## BROWN v. THE GRAND TRUNK RAILWAY.

*Liability of railroads as common carriers, as warehousemen, and as depositaries.*

After the responsibility of a railroad as a common carrier has ceased, they may charge for storage of goods as warehousemen, in which case they will be liable for ordinary care in relation to the goods.

But where they are acting in good faith as mere depositaries, without pay, they are only responsible for slight care, and would not be liable for an act of ordinary negligence on the part of their servant in taking care of the goods.

CASE, by Francis L. Brown against The Grand Trunk Railway, to recover damages for the loss of twenty gallons from a barrel of kerosene oil, carried by the defendants for the plaintiff from Portland, Maine, to North Stratford, N. H.; also, for an injury to ten barrels (of a lot of fifty barrels) of flour, carried by the defendants for the plaintiff from Island Pond, Vt., to said North Stratford, by wetting, soaking, and impregnating it with kerosene oil. Plea, the general issue.

By consent of the parties, the case was tried by the court. The writ contains three counts: the first and second counts seek to charge the defendants as common carriers; the first, for the loss of the oil; and the second, for the injury to the flour. The third count charges that the defendants, "at their special instance and request, had the care" of the oil and flour, and that the loss and injury occurred by reason of their not taking "due and proper care" thereof. The finding of the court upon the facts of the case is as follows: The plaintiff, on July 31, 1867, purchased the oil of Shaw & Haskell, at Portland, who sent it to the defendants' freight-house, in Portland, August 3, and signed an order and took a receipt, copies of which, upon blanks to be procured from the defendants, are to be furnished as a part of this case. The oil was forwarded on the same day, and arrived at North Stratford, August 5, and was stored there in the defendants' freight-house. The plaintiff's agent called for it August 10, paid the freight on it, and receipted for it on the defendants' book, and it was rolled from its place in the freight-house, and was about to be loaded upon a wagon and taken away, when the person in charge of the team refused to take it on account of its dirty and leaky condition; and soon afterwards it was rolled back by the defendants' servant, whose duty it was to do such work; and it was placed inside the freight-house by the side of the plaintiff's flour hereinafter mentioned. Between that day (which was Saturday) and the following Monday morning, a large quantity of the oil leaked out, ran upon the floor under the barrels of flour, and did the injury complained of. As soon as this was discovered by the defendants' servants on Monday morning, the barrel was rolled outside

the freight-house, and soon afterwards it was taken away by the plaintiff. This leakage was not through any hole in the barrel, but was through the pores of the wood in every part of it. It appeared that the barrel, on or just prior to August 10, through some failure of the shellac composition, or coating inside, or in some unknown manner, suddenly ceased to be impervious to kerosene oil. The plaintiff, on or about August 1, 1867, purchased by sample of J. W. House & Co., at Canaan, Vt., fifty barrels of flour, which was then at Island Pond, and was to be delivered at North Stratford. On the next day, House & Co. forwarded 110 barrels of flour from Island Pond to North Stratford, consigned to themselves, and paid the freight upon it. The flour arrived at North Stratford on the following day, and was stored there in the defendants' freight-house, and the defendants' agent there was directed by House & Co. to deliver fifty barrels of it to the plaintiff. *Amendment.* "The flour had been separated, and the fifty barrels of flour had been set apart for him by House's direction, and placed near the oil, and the balance was set apart to other persons." It did not appear that the plaintiff, whose place of business was at Canaan, twenty-two miles distant, caused any of the flour to be taken away until August 10, nor that the defendants ever received, or asked, or expected any compensation for storing it other than what may be incidentally included in the sum (which was the usual price) paid by House & Co. for the transportation of it from Island Pond to North Stratford, nor that the defendants notified the plaintiff of its arrival at North Stratford, but the plaintiff had good reason to expect it to arrive on or about August 3. House & Co., at the time of forwarding the flour, signed an order and took a receipt similar to the order signed and receipt taken by Shaw & Haskell hereinbefore mentioned. It did not appear that the attention of Shaw & Haskell, or of House & Co., had been called, previous to the injury complained of, to the " notices and conditions" upon the back of the application and receipt signed and taken by them respectively, nor that they actually knew, previous to said injury, what was upon the back of said orders and receipts; but it is the opinion of the court, that, by reason of having given similar orders and taken similar receipts before, they had no sufficient reason for not knowing what was upon the back thereof. But there was no evidence that the plaintiff ever signed such an order or took such a receipt, or had any knowledge on the subject of said " notices and conditions," and he did not give any notice in pursuance of the 11th article thereof. The 11th and 12th articles of said " notices and conditions " were as follows :

" 11. No claim for loss or damage for which this company is accountable will be allowed, unless notice in writing is given to the station freight agent within twenty-four hours after the goods are delivered.

" 12. Storage will be charged on all freight remaining in the depots over twenty-four hours after its arrival."

The conclusions of the court are, that there was no loss of oil or injury to flour until after the defendants had ceased to act in the capac-

ity of common carriers, as to both the oil and the flour (in which capacity as to the flour they never undertook to act, so far as the plaintiff is concerned) ; that the oil was lost by reason of a defect in the barrel containing it, which defect was not occasioned by any act or neglect of the defendants, and the defendants were not, after the leakage commenced, guilty of any negligence which increased the quantity of oil lost; that the act of placing the barrel of oil near the flour in the freight-house after the leakage commenced, and leaving it there from Saturday until Monday, was an act of ordinary negligence, but not an act of gross negligence, on the part of the defendants' servant, within the scope of his employment; that if the defendants are not exempted from liability by virtue of said " notices and conditions," and if, on the 10th of August, 1867, they were bound to take ordinary care of the flour, they are guilty of not having taken " due and proper care " thereof; but if on said 10th of August they were only bound to take slight care of it, they are not guilty of not taking " due and proper care " thereof.   Upon the whole case, the finding of the court was, that the defendants were guilty in manner and form as the plaintiff has declared against them, and damages were assessed (for injury to the flour, but nothing for loss of oil) in the sum of one hundred and seventy-five dollars, or that the defendants were not guilty in manner and form as the plaintiff has declared against them, according as the opinion of the whole court shall be upon the foregoing facts.

Case reserved.

*Ray, Drew & Heywood*, for the plaintiff.

*G. A. Bingham* and *Fletcher & Heywood*, for the defendants.

SARGENT, C. J.   We think this plaintiff would not be bound by the notice on the back of the shipping note and receipt in this case.   The common-law liability of the defendants, as common carriers, could not be limited in that way, by such notice, if it were brought home to the knowledge of the plaintiff,—*Moses* v. *Railroad*, 24 N. H. 71, 88, S. C. 32 N. H. 523—nor could the defendants' common-law liability as warehousemen or depositaries be limited in the same way, and, of course, not by a notice which was never brought to the plaintiff's knowledge at all.   The defendants would be liable, then, according to the rules of the common law, either as warehousemen, for hire, or as simple depositaries, notwithstanding the notice, and notwithstanding the demand was not made in accordance with the requirement.

No question arises here concerning the loss of the oil, and no question as to the liability of the defendants as common carriers.   These questions are settled by the finding of the court.   The only question is, upon the finding of the court, whether the defendants are liable for this act of ordinary negligence of one of their servants, acting within the scope of his employment, after their liability as common carriers had ceased, which they would be if acting in the capacity of warehousemen

for hire, but which they would not be if acting as simple depositaries.

In *Smith* v. *N. & L. Railroad*, 27 N. H. 86, it is said that, where the owner of goods is present at their arrival, and is notified that the railroad company cannot store them for want of room, and he still leaves them on their hands, they may be chargeable as depositaries if they afterwards assume the care of the goods by putting them into their storehouse; but if, after such notice to the owner, they adhere to their refusal to store, and do nothing with them, or simply remove them from their premises without damage, they would not be chargeable.

It is also said, in *Smith* v. *Railroad*, *supra*, that a carrier, in whose hands goods are left after the contract as common carrier had ceased, would be chargeable as a depositary unless the circumstances are such as to entitle him to a compensation for his services, in which case he will be liable as a bailee for hire. The court in this case find that, though the plaintiff had reason to expect this flour on the third of August, but did not go for any of it to take it away until the tenth, yet that the defendants did not in fact receive, or ask, or expect any compensation for storing it, other than what may be incidentally included in the sum paid by House & Co. for the freight of the same, which was only the usual charge for freight for the same distance.

In *Norway Plains Co.* v. *Boston & Maine Railroad*, 1 Gray 263, it is held that while the goods after transit are stored in the defendants' freight depots awaiting delivery, the company are depositaries for hire, and of course responsible for the ordinary care and attention of their servants and agents; that the amount charged for the transportation was to be assumed as an adequate compensation for the entire service of carrying to the point of destination, of storing a reasonable time, and for delivering when called for. Judge REDFIELD, after a review of the authorities, says,—" Of course there is no absolute duty to keep warehouses if the company choose to give notice of the arrival of goods in every case, and suffer them to remain in the cars until the consignee has reasonable opportunity to remove them. It is only for their own convenience in keeping goods to be carried till the train is ready to depart, or after their arrival until the consignee has reasonable opportunity to remove them. After that there is no doubt the carrier's responsibility as such ceases; and if the goods remain in the warehouse of the company, it is only with the responsibility of ordinary bailees for hire, as held in *Norway Plains Co.* v. *B. & M. Railroad*, or as was held in *Smith* v. *N. & L. Railroad*, with the responsibility of a bailee without compensation. The *former* degree of responsibility seems to us to be the just and reasonable one, as this is an accessory of the carrying business, and the carrier, after he becomes a warehouseman, is no doubt fairly entitled to charge in that capacity,—the omission to charge for warehousing, in the first instance, being the result of the course of the business, and because it is a part of the carrier's duty to keep the goods safely till the consignee has opportunity by the use of diligence to remove them." 2 Redf. on Railw., 5th ed., 76.

But in this case, the goods had been removed and delivered. The defendants had carried the flour safely for House & Co. to the place of consignment; had then kept it for House & Co. until by their order the agent of the defendants had selected the fifty barrels from the whole quantity; had removed it and put it by itself in the depot for the plaintiff. The plaintiff accepts it, for he has ratified these acts by bringing this suit for the flour in his own name. The freight which had been paid by House & Co., though it might be held to pay for storage also for a reasonable time, within which the shipper or the consignee (the same in this case) might take it away, yet it would not pay for storing the flour for the purchaser after the delivery to him.

And though the defendants might have charged the plaintiff for storage of the flour as warehousemen if they had so elected, yet the case finds that they did not, and did not expect to receive anything for this service. It was undertaken gratuitously, so to speak, and when so undertaken we cannot see by what rule the defendants should be held liable in a capacity in which they did not act, nor undertake to act, and were not understood by the plaintiff to act. The court have found that the defendants assumed the care and custody of this flour after it became the property of this plaintiff, without pay, and without any expectation of pay; in fact, that they were acting as simple depositaries. Since that was the capacity in which they undertook to hold this property, and were actually holding it for this plaintiff, we see no reason why they should be charged with duties and responsibilities which do not attach or belong to that kind of service, but think they should be charged with a degree of responsibility which belongs to and accompanies the actual service they were rendering.

Upon the finding of the court, we think there should be

*Judgment for the defendants.*