HOVEY *v.* GRANT.                          {Aug. 12, 1875.

*Evidence—Intention.*

In the trial of an action of trover, it became a material inquiry whether the defendant, when he bought certain spirituous liquors of the plaintiffs, intended to pay for them.    On cross-examination, the defendant stated that he did intend to pay for them, and had always been willing to pay what the goods were reasonably worth.    The plaintiffs then proposed to ask him if one J. C., pending this suit, representing the interests of the plaintiffs, offered him to release the claim if he would pay a sum very much less than the contract price of the liquors.    *Held* inadmissible.

On the question of intention, the defendant was permitted to show by his brother that he was preparing to enter into copartnership with the defendant in the purchase of these liquors, and was to furnish four thousand dollars towards said copartnership.    *Held* admissible, although no such agreement was ever perfected.

The defendant testified that one of the plaintiffs (H.) agreed with him that he should retain the liquors, and sell them to the best advantage, giving as a reason, that if they were returned to Boston he was afraid they would be seized for debt.    This agreement and conversation the plaintiffs denied.    Thereupon the defendant offered in evidence a certified copy of H.'s petition in bankruptcy.    *Held* admissible.

In such action the burden of proof is on the plaintiff to make out his title to the property in question; and this burden is not shifted upon the defendant when he attacks the plaintiff's title by new and independent matter, arising at a period subsequent to the original sale, which is claimed to be fraudulent.

This is a review of an action of trover, for the fraudulent conversion of twenty-two barrels of liquors, of the alleged value of $2,424.82, tried before RAND, J.

The plaintiffs claim, among other things, that the defendant, when he bargained for these liquors, had no intention of paying for them. The defendant denied this, and stated, upon cross-examination, as did his counsel in his opening, that he did intend to pay for them, and had always been willing to pay what the goods were reasonably worth,—but that he was not liable in this suit; that the goods were of an inferior quality, and had been sold by him prior to the suit for one half the original price, by an agreement subsequent to the sale, which he claimed he had made with one of the plaintiffs upon discovery of their inferior quality, that he should keep the goods and sell them for the most he could get. This agreement the plaintiffs denied; and, as bearing upon the question of intent, and to contradict the testimony and position of the defendant that he had always been willing to pay for the goods what they were reasonably worth, the plaintiffs proposed to ask the defendant, on cross-examination, if one John C. Cassidy, pending this suit, representing the interests of the plaintiffs, went to his (the defendant's) store in Portsmouth, and said to him that Mr. Hovey, one of the plaintiffs, was poor, and if he would pay him the sum of six hundred dollars, and the costs of his attorney amounting to one hundred dollars more, he would release the claim to him.

The defendant, as bearing upon the question of his intention to pay for these goods, was permitted to show, by his brother, that he was preparing to enter into copartnership with the defendant in the purchase of these liquors, and was to furnish the sum of four thousand dollars towards said copartnership; but no such agreement was ever perfected. To this testimony the plaintiffs excepted. The defendant testified that one of the plaintiffs (Hovey) agreed with him that he should retain the liquors and sell them to the best advantage, and that Hovey gave as one reason for so desiring, that if the goods were returned to Boston he was afraid that they would be seized for the payment of debt. This argeement and conversation the plaintiffs denied.

As bearing upon this question, the defendant, subject to the plaintiffs' exception, was permitted to introduce in testimony a certified copy of said Hovey's petition in bankruptcy as evidence of his personal indebtedness at that time. The defendant was permitted to inquire, for the purpose of impeaching the witness upon cross-examination, subject to the plaintiffs' exception, of one C. C. Moore if he had failed in business.

The plaintiffs also claimed that the original contract for the sale of these goods was, that they were to be examined in four days, and, if satisfactory, then paid for,—and to remain the plaintiffs' property until paid for. The court instructed the jury, that, if the original bargain was as the plaintiffs contended, the goods were to remain their property until paid for,—yet if Mr. Hovey, about the middle of September, agreed with Mr. Grant that the liquors were not such as had been actually examined in Boston, and that the defendant might take and sell

them for what he could, that in that case the original contract was re-scinded, and the plaintiffs cannot recover upon the claim that the goods were to remain theirs until paid for. The plaintiffs therefore requested the court to charge the jury, that if the defendant set up any such new agreement, as above stated, the burden of proof as to their new contract was upon the defendant.

This request the court denied, and the plaintiffs excepted. The questions thereupon arising were transferred to the superior court.

*Frink,* for the plaintiffs.

I. The position of the plaintiffs at the trial was, that the defendant, when he bargained for these goods, had no intention of paying for them. *Hovey* v. *Grant,* 52 N. H. 569. The defendant regarded it necessary to his defence that he should give some reason for his refusal to pay for these goods. The reason he assigned was, that the goods were of an inferior quality; and, to give greater emphasis to this reason, he said, both by counsel and by himself, that he had always been willing to pay what the goods were reasonably worth.

If the jury found that the defendant had always been willing to pay what the goods were worth, it must have gone far to have convinced them of the honesty of his defence, and of his consequent intention to pay for them at their purchase; but if it could be made apparent to them that he had the opportunity and would not pay one half of what he received for them by sale, then it must have had equal weight in leading the jury to the conclusion that this defence was a mere pre-tence. The rule is very liberal in admitting testimony in cases of fraud, or where the *bona fide* intention of the parties is in question. Whatever is calculated to throw light upon the professed motives of the parties is competent for the consideration of the jury. *Blodgett* v. *Farmer,* 41 N. H. 398; *Angier* v. *Ash,* 26 N. H. 109.

Let us put these two propositions : 1. The plaintiffs prove that the defendant agreed to pay for these goods, had the ability to pay for them, and did not. 2. The defendant replies, he did not pay because the goods were not of the quality represented, but has always been willing to pay what they were worth. Cannot the plaintiffs rejoin, We offered to take much less than you acknowledged they were worth ?

We understood this testimony at the trial to be rejected upon the ground that its admission would be an infringement upon the rule ex-cluding evidence relating to attempts at compromise. This objection is not tenable. The purpose of this rule is, to exclude offers to pay money, and acknowledgments or admissions adverse to a party made in the hope of an adjustment of difficulties. This evidence could not in any way be tortured into an acknowledgment of liability by the defendant, and hence does not come within the prohibition relating to treaties for a compromise. There was nothing in the offer and its re-jection by the defendant that he desired, or could have desired, to be treated as confidential. *Perkins* v. *Railroad,* 44 N. H. 225.

2. The defendant has the right to testify what his intention was in

buying these goods. He so testified by saying he had always been willing to pay for these goods what they were worth. This testimony was competent and material. *Hale* v. *Taylor*, 45 N. H. 407; *Janvrin* v. *Fogg*, 49 N. H. 341. It hardly seems necessary, but the language is so apposite that we cannot refrain from quoting the concluding words of the opinion in *Brigham* v. *Clark*, 100 Mass. 432: "Whenever a witness has testified to any material fact, any acts or declarations of his which appear to be inconsistent with his version at the trial are competent by the way of contradiction."

II. The testimony as to the unperfected agreement of copartnership with the defendant's brother, we submit, is open to these several objections: 1. That it was *res inter alios*. 2. That it was too remote. 3. That being unperfected, it amounted to nothing more than the declarations or conversations of these parties. It would have been just as competent for the defendant to have introduced evidence of the conversations of himself and brother upon this subject, as to have stated generally, as he and his brother did, that he was proposing to enter into an agreement which was never consummated. All there could possibly be to such an agreement was *talk*.

III. The testimony as to Hovey's personal indebtedness was incompetent, and calculated to mislead the jury. These goods belonged to a firm jointly. They could not have been seized upon any personal claim of either copartner. The testimony had no tendency to prove the truth or falsity of the conversation set up by the defendant, or to show it more probable than otherwise. With proper qualifications or explanations it might have been immaterial and harmless; but without any limitation it must have had a tendency to mislead. This testimony is so remote to the issue upon which it was offered, that we fear the counsel had some design in introducing it which they did not choose to divulge.

IV. The court, we are aware, can use its discretion in permitting questions to be put to a witness tending to degrade him. We have never known the exercise of this discretion to be extended so far as to allow a witness to be asked irrelevant questions in regard to his business misfortunes. We submit that such a question is incompetent, because it has no just tendency to degrade or impeach a witness; and yet it is dangerous, because it might rob the testimony of the witness, in the minds of undiscriminating juries, of the weight to which it was entitled.

V. We submit that, upon the authority of all the recognized text writers as well as of the judicial decisions, the court erred in refusing our request to charge that the burden rested upon the defendant to establish by proof the new and subsequent agreement he set up in avoidance of the original contract. The rule undoubtedly is, that the burden is on the plaintiff through the whole cause to establish the facts necessary to support his case; but if the defendant will avoid the plaintiff's case by availing himself of a new and subsequent agreement as a defence, the burden is upon him to prove it. *Broaders* v. *Toomey*, 9 Allen 67. The party who alleges a new agreement in discharge of

an old one, is bound to prove a distinct agreement to that effect—
*Woodward* v. *Miles*, 24 N. H. 289; and the burden is upon the de-
fendant, whether upon a special plea or under the general issue.
*Buzzell* v. *Snell*, 25 N. H. 474; *Walton* v. *Eldridge*, 1 Allen 206.

*Hatch*, for the defendant.

LADD, J.    The question was as to the intention of the defendant
at the time he bargained for the liquors.    He testified that he then in-
tended to pay for them, and on cross-examination the statement was
drawn from him that he had always been willing to pay for them what
they were reasonably worth.    It was to contradict him in this state-
ment that the plaintiff proposed to ask him about the interview with
Cassidy, which took place after the commencement of this suit.
Whether that question should have been allowed depends upon whether
or not the statement of his willingness to pay, made at a time subse-
quent to the purchase, was relevant and material to the issue as to his
intention at the time of the purchase; and it seems to me it was not.
Suppose, at some time after the commencement of this suit, he had
said,—I will never pay anything unless I am compelled to; or, I will
pay one half the contract price: could it be contended that such decla-
rations would be legally admissible upon the question of his intention at
the time of the purchase?    The offer was, to show that he failed to
comply with a proposition from the plaintiffs to accept a certain sum
(less than he said he had always been willing to pay) in satisfaction
and discharge of their claim.    I think this was inadmissible, on the
ground that his willingness or unwillingness to pay, at a time subse-
quent to the transaction and after the suit was commenced, was imma-
terial.    See *Bell* v. *Woodward*, 47 N. H. 539, 540.

Whether at the time of the purchase the defendant had, or believed
he had, within his power the means to pay for the liquors, was certainly
admissible upon the question of his intention.    Upon this ground,
I think there was no error in receiving the evidence that he was
preparing to enter into copartnership with his brother in the purchase,
and that four thousand dollars was to be furnished by the brother
towards the partnership funds.    It was as competent to show that he
had a reasonable expectation of being able to pay, as it would have
been, on the other hand, to show, from the situation of his affairs, that
he could have had no such reasonable expectation.

As to the petition in bankruptcy, it cannot be denied that its bearing
was quite remote.    The question was, Did the plaintiff Hovey agree
with the defendant that he should retain the liquors, and sell them to
the best advantage?    On this point the defendant's testimony was one
way, and that of the plaintiff's the other.    The defendant, in giving
the account of this alleged agreement, said the plaintiff gave as a rea-
son why he did not want the liquors sent back to Boston, that he was
afraid they would be seized for debt: this the plaintiff also denied.
So far, I think, the evidence was relevant and material; it was a ques-
tion which told the truth.    Now, suppose the plaintiff had thereupon

offered to prove that he was at that time possessed of ample means, and had not a creditor in the world: would not such evidence tend to show the improbability of his making such a remark, and also the improbability that he was unwilling to have the liquor sent back to Boston for the reason assigned? It seems to me it would; and I can see no substantial difference when the matter is reversed, and the defendant, to support his position and discredit that of the plaintiff, offers to show that the plaintiff had creditors, and was, in fact, insolvent. I cannot see that the fact of the liquors being partnership property makes any difference. The interest of one partner in the assets of the firm may be reached and applied to the payment of his individual debts. I am, upon the whole, inclined to hold that the verdict should not be set aside on account of the admission of the petition in bankruptcy.

The irrelevant question to Moore, whether he had failed in business, is said to have been admitted for the purpose of impeaching the witness. It may not be very apparent how it had that tendency; very good and very truthful men are doubtless sometimes overtaken by misfortune, and fail in business; but the question appears to have been allowed by the court in the exercise of a discretion which is not ordinarily the subject of exception or revision here.

The last exception was to the refusal of the court to charge the jury that the burden of proof, as to the agreement that the defendant might take and sell the liquors for what he could, alleged to have been made about the middle of September, was on the defendant.

I think this refusal was very clearly right. The action was trover. The plaintiffs must of course make out a sufficient title to maintain the suit, or fail. Any attack which the defendant made upon that title was a direct denial or impeachment of a proposition whereof the affirmative was on the plaintiffs all the way through. This new agreement was not in the way of confession and avoidance at all. It was only one way of denying very directly a material allegation in the plaintiff's writ. *Benton* v. *Burbank*, 54 N. H. 583; *Crawford* v. *Roberts*, 54 N. H. 532. I am of opinion that the exceptions must all be overruled, and that there should be judgment on the verdict.

CUSHING, C. J. The counsel for the defendant, having seen fit to put forward his client's willingness to pay as a matter material to his defence, as tending to strengthen his position that his client intended to pay when he bought the goods, I should have been inclined to hold him to that, and to permit evidence in contradiction to be given. But the fact, that after action was commenced the defendant would not then accept an offer encumbered with the payment of a heavy counsel fee, appears to be of such doubtful tendency to contradict the statement, that I think the verdict should not be set aside on account of its exclusion; and I entirely concur in what has been said by my brother LADD in regard to the rest of the case.

SMITH, J. The exceptions must be overruled, and there must be

*Judgment on the verdict.*